UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronnie TRAMMEL,
Defendant-Appellant.

No. 86–1952.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1986.

Decided March 18, 1987.

Rehearing and Rehearing En Banc
Denied April 28, 1987.

Brian W. Gleason, Milwaukee, Wis., for defendant-appellant.

Janice E. Kearney, Asst. U.S. Atty., Joseph P. Stadtmueller, U.S. Atty., U.S. Atty.'s Office, Milwaukee, Wis., for plaintiff-appellee.

Before WOOD and POSNER, Circuit Judges, and WILL, Senior District Judge.*

WILL, Senior District Judge.

Ronnie Trammel appeals the district court's denial of a motion to dismiss his federal criminal indictment based on the government's alleged violation of the Interstate Agreement on Detainers Act, 18 U.S.C. App. (1982). We affirm.

## I.

On February 11, 1986, a federal grand jury sitting for the Eastern District of Wisconsin returned an indictment charging Ronnie Trammel with theft of postal service property in violation of 18 U.S.C. §§ 1707, 1702. At the time of his indictment, Trammel was out on parole on an unrelated state charge. Trammel had apparently violated the conditions of his parole some time before February 4, 1986, and on February 20, 1986, the state issued a revocation order and warrant commanding the superintendent of the Milwaukee House of Correction to hold Trammel pending his return to the Wisconsin Dodge Correctional Institution where he was to complete his sentence.[1]

On February 26, 1986, the federal magistrate issued a writ of habeas corpus ad prosequendum directing the marshal to pick up Trammel, who was in the House of Correction in Milwaukee, for arraignment in federal court on February 28, 1986. After the magistrate signed the writ, the marshal called the House of Correction to advise "the state authorities that Mr. Trammel was wanted by the marshal for federal proceedings on February 28th at 8:00 a.m. and that a writ would accompany the marshal for pick-up at that time." (Appellant's Br. 5). The sheriff deputy at control central who took the call placed the following memo in the House of Correction "court book" for February 28, 1986: "Ronnie Trammel 8 a.m.—U.S. Marshal. Pick up. Will bring writ along."

As scheduled, at 8 a.m. on February 28th, the marshal picked Trammel up from the House of Correction and brought him to the holding cell at the United States Marshal's office. At 9 a.m. Trammel was arraigned at the United States Courthouse in Milwaukee. After he was arraigned, Trammel signed a personal recognizance bond and was returned to the Milwaukee House of Correction pursuant to the writ. As an express condition of Trammel's bond, the marshal mailed a detainer to the House of Correction one week later. This was to

---

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. The House of Correction is a Milwaukee county facility that houses persons sentenced by the Milwaukee county circuit courts and is also used to house probation and parole violators pending revocation proceedings. The federal government does not have a contract with the House of Correction to house federal prisoners.

insure that Trammel would be returned to federal custody upon expiration of his state sentence.

Ten days later Trammel filed a motion to dismiss the federal indictment with prejudice. Trammel contended that the federal authorities had filed a detainer against him and returned him to state custody without first trying him on the federal charges, in volation of the Article IV(e) of the Interstate Agreement on Detainers Act, 18 U.S.C. App. (1982). The district court, adopting the magistrate's recommendation, denied Trammel's motion. Trammel then entered a conditional plea under Rule 11(a)(2) of the Federal Rules of Criminal Procedure reserving his right to appeal the district court's order denying the motion to dismiss his indictment.[2] The district judge sentenced Trammel to two years of imprisonment to run concurrent with the state sentence he was already serving. This appeal followed.

## II.

This case turns upon whether the marshal's telephone call to the House of Correction and the subsequent notation made by the sheriff in the "court book" placed a detainer on Trammel within the meaning of the Interstate Agreement on Detainers Act ("Act"). Article IV(e) of the Act requires the dismissal of an indictment against a prisoner who is obtained from state custody while under a detainer if federal authorities return the prisoner to state custody without a trial on the indictment underlying the detainer.[3] Accordingly, if we find that the actions of the marshal and the sheriff placed a detainer on Trammel, then pursuant to Article IV(e) of the Act, we must dismiss Trammel's indictment. *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

Despite the obvious importance of the meaning of the term "detainer" to its administration, the Act does not define the term. The House and Senate reports accompanying Congress's adoption of the Act, however, define a "detainer" as "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." H.R.Rep. No. 1018, 91st Cong., 2d Sess. 2 (1970); S.Rep. No. 1356, 91st Cong., 2d Sess. 2, *reprinted in* 1970 U.S.Code Cong. & Admin.News 4864, 4865.[4]

Trammel argues (1) that the Marshal's telephone call to the House of Correction was a detainer because it was a "notification" to a state "institution" that Trammel was "wanted to face pending charges in another jurisdiction," and (2) that the subsequent notation placed by the sheriff in the House of Correction's "court book" (i.e., "Ronnie Trammel 8 a.m.—U.S. Marshall Pick Up. Will bring writ along.") constituted the "filing" of a detainer. Thus, Trammel contends that the government obtained him from state custody under a detainer and returned him to state custody before trying him on the underlying charges, that the Act's sanctions therefore apply, and that the district court erred in refusing to dismiss his indictment.

---

**2.** Rule 11(a)(2) states in relevant part:
   With the approval of court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

**3.** Article IV(e) provides in relevant part:
   If trial is not had on any indictment ... prior to the prisoner's being returned to the original place of imprisonment ... such indictment ... shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

**4.** Because such notification may be filed by any law enforcement authority empowered to take an individual into custody, a detainer may be issued without judicial authorization or supervision. Moreover, a detainer once filed, remains lodged against the inmate until further affirmative action is taken. Prior to the passage of the Act, a detainer could remain lodged until the expiration of the prisoner's sentence, causing serious damage to the prisoner's rehabilitation, his chance for parole or other institutional privilege. *See generally United States v. Ford*, 550 F.2d 732 (2d Cir.1977).

To support this conclusion, Trammel claims support for his position in *United States v. Schrum*, 504 F.Supp. 23 (D.Kan. 1980), *aff'd*, 638 F.2d 214 (10th Cir.1981). A review of that case, however, reveals that it stands for the proposition that where the federal government first lodges a detainer against a state prisoner, and later obtains custody of the prisoner by means of a writ of habeas corpus ad prosequendum, and returns the prisoner to state custody without first trying him on the federal charges, the Act's sanctions are triggered and the indictment must be dismissed.[5]

*Schrum* is of no help in the instant case, however, for our question is not what happens upon the actual filing of a detainer and subsequent transfer of temporary custody, but whether the acts of the marshal and sheriff constituted a detainer in the first place.

For *Schrum* to apply, a detainer must issue from an act prior to and separate from the issuance of a subsequent writ of habeas corpus ad prosequendum. This follows also from the Supreme Court's holding in *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), that the writ of habeas corpus ad prosequendum itself is not a detainer under the Act. *Id.* at 361, 98 S.Ct. at 1847. Trammel's awareness that the detainer cannot lie in the writ is indicated in his two-stage account of his initial removal from the state facility: the first stage would be the marshal's telephone call and the sheriff's message; the second step would be the marshal's appearance at the state facility with the writ of habeas corpus ad prose-

quendum. By separating these stages Trammel would avoid labeling the writ a detainer; the filing of a detainer occurred with the telephone call, the delivery of the writ when the marshal picked up Trammel. Trammel would therefore have us separate the telephone call from all actions pursuant to the execution of the writ and describe the telephone call as the filing of a detainer which would trigger the Act.

Yet Trammel himself blurs the distinction between these alleged stages when he asserts that the parties stipulated "that the Marshal had advised the state officers that a writ of habeas corpus ad prosequendum would accompany the Marshal." (Appellant's Br. 11, 19, 32). Although this statement is not an implausible account of what the marshal could have said when calling the House of Correction—for the marshal made the call pursuant to his intention to execute the writ which had been issued prior to the call not after the detainer had been lodged as in *Schrum*—the statement is unsupported by the record. However, even if we assume that Trammel's account of the phone call is correct, we cannot describe the phone call as an act with any force independent of the writ, for the putative purpose and content of the call concerned the planned execution of the writ. To abstract the communicative function of the call from the message it allegedly communicated and then to label the abstracted communicative element a "detainer" would serve only to inhibit informal courtesy notifications of a kind that save time and trouble on both ends, expedite the procedures and contribute in small but meaningful ways to the intergovernmental comity that is among the expressed purposes of the Detainer Act itself.[6]

---

5. In *Schrum*, for example, the defendant was incarcerated in a state jail when a federal grand jury returned an indictment against him. The following day, the marshal, without the prosecutor's knowledge, lodged a detainer against the defendant with the state prison. Two days later, the magistrate granted the prosecutor's petition for a writ of habeas corpus ad prosequendum to secure the defendant's presence for arraignment in federal court. After the arraignment, the marshal returned the defendant to

state authorities. Pursuant to Article IV(e) of the Act, the district court dismissed the indictment in this "transitory custody" situation because the Act's sanctions were triggered when the government filed a detainer prior to the issuance of the writ of habeas corpus ad prosequendum.

6. According to Article 1 the three purposes of the Act are: (1) to establish more "cooperative

Strictly speaking, however, as the government pointed out at oral argument, Trammel mischaracterizes the record. Despite Trammel's assertions to the contrary, the parties never stipulated that the marshal's phone call mentioned that the writ involved was a writ of habeas corpus ad prosequendum. (Joint Stipulation of Fact, ¶ 5, Appellant's App. A–8).[7] The sheriff's message simply stated that the Marshal would pick Trammel up at 8 a.m. and that he would *"bring writ along."* Nothing in this message indicates that the marshal was to pick Trammel up pursuant to a writ of habeas corpus ad prosequendum. In other words, nothing in the marshal's call or the sheriff's message would have indicated that Trammel "was wanted for prosecution in another jurisdiction." The writ of habeas corpus ad prosequendum is only one of several kinds of habeas corpus writs, *see* 28 U.S.C. §§ 2241 (1970), and the phrase "will bring writ along" could just as easily have referred to one of the other writs such as a writ of habeas corpus ad testificandum. For all that the written record shows, the federal authorities may have wanted Trammel's testimony in the trial of someone else.

The telephone call, in any event, was no "notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." It was simply advance notice that the federal authorities would appear at 8 a.m. on February 28 with some type of habeas corpus writ to pick up Trammel for an appearance in federal court.

On either account, therefore, Trammel's or that stipulated in the record, the telephone call and the notation did not constitute a detainer. The record stipulates nothing about notification of prosecution, and Trammel defeats his attempt to separate the writ from the alleged detainer by making delivery of the writ the content of the phone call that constituted the alleged detainer. We cannot label the telephonic notification of the writ's future delivery a detainer without running afoul of the Supreme Court's decision in *Mauro*. We therefore conclude that the government did not violate section IV(e) of the Act when it temporarily transferred Trammel from state to federal custody for arraignment pursuant to a writ of habeas corpus ad prosequendum, and then returned him to the state facility without first trying him on the federal charges.

AFFIRMED.

---

procedures" for interjurisdictional transfers; (2) to minimize the adverse effects of detainers on a "prisoner treatment and rehabilitation"; and (3) to "encourage the expeditious and orderly disposition of [any outstanding criminal] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints."

7. Paragraph 5 of the Joint Stipulation of Fact states:

Upon the signing of the writ and notice given to the Marshal, a telephone call was made by the Marshal to the House of Correction on February 26, 1986 advising the state authorities that Mr. Trammel was wanted by the Marshal for federal proceedings on February 28 at 8:00 a.m. and that a writ would accompany the Marshal for pick up at that time.