No. 48,322

STATE OF KANSAS, *Appellee,* v. JOE WAYNE CLARK, *Appellant.*

(563 P.2d 1028)

Opinion filed April 9, 1977. ▮

*Mikel L. Stout,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and was on the brief for the appellant.

*Stephen E. Robison,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.:   Defendant appeals from his convictions for the offenses of aggravated burglary, aggravated robbery, kidnapping and battery.

An information for the above-stated charges was filed on November 13, 1973. Defendant waived arraignment and was released on bond, with trial set for January 7, 1974. On that date defendant failed to appear.

Subsequently, defendant was apprehended in the State of Arkansas for offenses committed while in that state. He was convicted of several offenses and sentenced to serve a 67-year prison term.

Authorities in Sedgwick County, Kansas, learned of defendant's Arkansas incarceration and decided to bring him to Kansas to be tried on charges previously filed. On November 27, 1974, the Sedgwick County prosecutor filed a request for temporary custody of defendant, pursuant to Article IV of the Agreement on Detainers (hereinafter referred to as Agreement). (K.S.A. 22-4401, *et seq.*) A copy of the request was mailed to defendant and was received by him on November 27 or 28, 1974. For some unknown reason the copy to be served upon the prison authorities at Grady, Arkansas, was misplaced.

A formal detainer, as contemplated in Article III of the Agreement, was never filed by Sedgwick County with the Arkansas authorities. Although defendant received a copy of the request, he was never formally notified by Arkansas authorities of the existence of a detainer, nor was he ever informed of his right to a speedy trial.

The request for temporary custody languished in the hands of the Arkansas authorities until April 2, 1975, when they offered to turn defendant over to Kansas. Kansas authorities obtained custody of the prisoner on May 2, 1975. Upon arrival in Kansas defendant filed a motion for discharge for lack of speedy trial, which was overruled. Trial began on June 10, 1975, at which time defendant renewed his motion. It was again overruled. Defendant was found guilty.

The initial question is whether an accused imprisoned in a penal institution of another state, who has a detainer lodged against him for criminal charges pending in the State of Kansas, is entitled to dismissal of the charges when the authorities of the retaining institution fail to inform him of the existence, source and contents of the detainer and fail to inform him of the right to request final disposition thereof, pursuant to the Agreement. This question, in the context of the Agreement, is one of first impression in this jurisdiction.

The interstate Agreement on Detainers was enacted to provide a method whereby a prisoner in another state or federal institution could require disposition of charges pending against him. Under the Agreement, once a detainer has been lodged the authorities having custody of the prisoner "shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition" thereof. (K.S.A. 22-4401, Art. III [c].) If the prisoner properly enters a request, he must be returned to the jurisdiction in which the detainer was filed and tried within 180 days of the time he requests disposition. If the prisoner makes no request for disposition, he must be tried within 120 days from the time he is returned to the requesting state. Failure to try the prisoner within the applicable time requires dismissal of the charges upon which the detainer is based.

The state argues it is not necessary to face the foregoing issue because a detainer was never filed and the Agreement has no application. We cannot construe the term "detainer" so narrowly. Were we to do so the state could forestall the application of the Agreement by filing a request for temporary custody, ignoring the use of a formal detainer. A detainer is a hold order or informal demand by one exercising public authority for the possession of a person already in lawful custody. In the field of interstate rela-

tions, a detainer puts prison officials in the custodial state on notice that the prisoner is charged with a crime in another state and is a fugitive from justice. (*Bursque v. Moore*, 26 Conn. Sup. 469, 227 A. 2d 255 [1966].) Under the Agreement, a detainer is simply a notice filed with the confining institution that criminal charges from another jurisdiction are outstanding and the prisoner is wanted in order to stand trial on those charges. (*United States Ex Rel. Esola v. Groomes*, 520 F. 2d 830 [3d Cir. 1975].) We conclude that under the Agreement a request for temporary custody which has not been preceded by a formal detainer has the legal effect of a detainer.

The facts of the instant case render the 180-day provision inapplicable. The provision is not triggered because defendant was never notified of the existence of the request for temporary custody and his concomitant rights. This court must determine the effect of a detainer on a defendant's right to a speedy trial when he is not informed in the manner prescribed by the Agreement.

The Uniform Mandatory Disposition of Detainers Act (hereinafter referred to as Act) provides that a prisoner incarcerated in this state shall promptly be notified in writing of any detainer lodged against him and shall be informed of his right to request a speedy disposition of the charges comprising the detainer. (K.S.A. 22-4301 [b].) Failure to notify a prisoner, as required, within one year entitles the prisoner to a final dismissal of the charges with prejudice. (K.S.A. 22-4301 [c].) This court has invoked the sanction for failure to notify on two occasions. (*State v. Norris*, 210 Kan. 457, 502 P. 2d 817; *State v. Ellis*, 208 Kan. 59, 490 P. 2d 364.)

Although this court has stated the purposes of the Act and the Agreement are parallel (*Ekis, Petitioner v. Darr*, 217 Kan. 817, 539 P. 2d 16; *State v. Dolack*, 216 Kan. 622, 533 P. 2d 1282), we do not mean to imply that the Act and the Agreement are alike or identical in all respects. The Agreement is distinguishable from the Act in cases where prison officials fail to notify a prisoner of an outstanding detainer. While the Act provides a sanction which compels a court to dismiss charges when a prison official fails to notify a prisoner, the Agreement has no such provision.

A legislative enactment providing for a speedy trial, with no sanction for failure to comply with the mandate, is generally

construed as directory. (*State v. Fink*, 217 Kan. 671, 676, 538 P. 2d 1390, and cases cited therein.) In the absence of a specific sanction, the right to a speedy trial must be gauged from a constitutional viewpoint. (*State v. Otero*, 210 Kan. 530, 502 P. 2d 763.) Criteria to be considered were set out in *Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 92 S. Ct. 2182. There the court stated:

" . . . We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

In the present case the total delay from the time the request for temporary custody was filed until the beginning of trial was 196 days. The reason for the delay was due partly to the negligence and inaction of the prosecution in processing the detainer. It was sent to the prison authorities in Arkansas where it vanished for over four months. The state did not explain what became of the request, nor did it explain why it did not inquire as to the fate of the request after Arkansas authorities did not respond to the request after 30 days had elapsed. (K.S.A. 22-4401, Art. IV [a].) While this delay is to be charged against the state, there is no showing that it was done intentionally.

It does not appear that defendant asserted his right to a speedy trial or that he attempted to do so. The record indicates he received a copy of the request for temporary custody at the same time it was sent to the Arkansas authorities. Although receipt of a copy of a detainer by a prisoner is not notification contemplated by the Agreement (*State v. Ellis*, supra), it is of some significance that defendant never inquired about the detainer after he received a copy.

Finally, defendant does not claim he was prejudiced by the delay. The trial started 16 days after the 180 days the state would have had to bring defendant to trial if he had been properly notified and had requested a speedy trial. This estimate of time must be based on an assumption the authorities in Arkansas notified defendant on the day the detainer was received and defendant on the same day requested trial in Kansas.

We conclude an application of the factors set forth in *Barker v. Wingo*, supra, to the facts and circumstances in the instant case, reveals the defendant was not denied a speedy trial.

The charges for which defendant was convicted arose out of the robbery of a coin shop on October 10, 1974. Defendant and three other men concocted a scheme whereby they broke into the home of the owner of the shop and took him and his wife captive. While two of the men held the owner's wife at knifepoint, the others took the owner to his shop, forced him to open his safe and place several thousand dollars worth of rare coins in a purple bag. The loot was cached in some bushes near the intersection of First and Quentin in Wichita. It was found after a neighbor observed a man walking near the bushes. When the man approached the bushes he was carrying something, but when he walked away he was empty-handed. Police were alerted and set up a surveillance team. Defendant, his girl friend and the three other accomplices were arrested by police as they tried to retrieve the coins. Tony Scott, Gary Weyer, David Weyer and the defendant were all charged. All pled guilty except defendant. He was tried and found guilty by a jury.

During trial Gary and David Weyer were called as witnesses for the state. David testified as to the planning and execution of the crimes, relating defendant's role. Because David Weyer had several lapses of memory and could not remember specific details the state called Detective Darrell Oakley, who had taken a statement from David shortly after his arrest. Oakley testified to the details of the crime as related to him by David at the time of arrest.

While Oakley was on the stand he testified to a statement about the crime, made to him by Gary Weyer at the time Gary was arrested. The statement set forth the details of the crime and named defendant as one of the perpetrators. Gary Weyer was present in the courtroom at the time. He then took the stand as a state's witness and testified that Detective Oakley's testimony concerning his statement to the police was accurate.

Defendant alleges it was a violation of K.S.A. 60-460 (*a*) to allow Detective Oakley to relate to the jury the statements of Gary and David Weyer. While he admits the requirements of 60-460 (*a*) were met, he argues the spirit of the statute was violated. The heart of his complaint centers on the practice of using a "professional" witness to testify as to statements made by a defendant's accomplices.

It must be noted that defendant did not object to the introduction of David Weyer's statement at the time of trial on the basis it was hearsay; he objected that the state was impeaching its own witness. A defendant cannot object to the introduction of evidence on one ground at the time of trial and assert a new objection on appeal. (*State v. Patchett,* 203 Kan. 642, 455 P.2d 580.)

The argument of defendant that both of the Weyers' statements were inadmissible is without merit. Arguments similar to defendant's were set forth and answered in *State v. Fisher,* 222 Kan. 76, 563 P.2d 1012. There we reversed convictions for indecent liberties with a child and aggravated sodomy because a portion of the damaging evidence was a statement made to police by a person who was present in the courtroom, but not put on the stand by the state during trial. We held that when a declarant testifies on behalf of the state in a criminal trial his out-of-court statements may be admitted under K.S.A. 60-460(*a*).

Applying *Fisher* to the instant case we find no reversible error. David Weyer was placed on the stand and testified just before his statement was introduced. Gary Weyer's statement was introduced immediately prior to the time he took the stand. While it would be a better practice to put the declarant on the stand prior to the introduction of his statement, there is no error in reversing the order if the declarant testifies for the state.

Defendant next contends the trial court committed error in admitting hearsay statements of Tony Scott and in allowing David Weyer to testify in a conclusional manner. No objection was lodged at trial on either point; therefore, it is beyond review on appeal. (*State v. Jones,* 222 Kan. 56, 563 P.2d 1021.)

Finally, defendant alleges the state committed reversible error during closing remarks. The state presented its first closing statement. When defendant replied, he criticized the method used by the state in presenting David's and Gary's statements. In the closing argument the prosecutor replied that when witnesses take the stand they are sworn to tell the truth; that they relate facts and the state does not tell them what to say or not to say; and that in this case the Weyers were accomplices and accomplices don't like to testify against one another. Defendant objected to the statements.

Here the remarks were not improper. They were invited by defendant's closing argument. It was defense counsel who

opened the door by criticizing the manner in which the prosecutor presented his case. The state simply responded to this argument. There is no prejudicial error when a statement of a prosecutor is provoked and made in response to previous arguments or statements of defense counsel. (*State v. Robinson*, 219 Kan. 218, 547 P. 2d 335, and cases cited therein.)

The judgment of the trial court is affirmed.