Gerald R. SCHIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–87–00340–CR.

Court of Appeals of Texas,
Dallas.

Jan. 22, 1988.

Wes Reed, Dallas, for appellant.

Anne B. Wetherholt, Dallas, for appellee.

Before WHITHAM, McCLUNG and STEWART, JJ.

STEWART, Justice.

Appellant pled guilty, pursuant to a plea bargain agreement, to the offense of theft of property of the value of $700 or more, but less than $20,000. The agreement recommended three years' confinement and permitted a limited appeal of appellant's motions to dismiss which were denied by the trial court. The trial court assessed punishment in accordance with the agreement at three years' confinement in the Texas Department of Corrections. In a single point of error, appellant contends that the trial court erred in denying his motions to dismiss based on the speedy disposition provisions of the Speedy Trial Act, TEX.CODE CRIM.PROC.ANN. art. 32A.02, § 1(1) (Vernon 1978) and the Interstate Agreement on Detainers Act, ("the IAD") TEX.CODE CRIM.PROC.ANN. art. 51.14 (Vernon 1979).

On January 5, 1985, appellant was placed in custody in Arizona on an Arizona offense. Appellant was sentenced on July 10, 1985, and sent to an Arizona prison. While in custody, appellant received a Dallas County warrant and a federal detainer from Kansas that had been lodged against

him. Appellant contends that he repeatedly sought from Arizona prison authorities the institutional forms needed to request a speedy trial on outstanding Dallas charges. When appellant allegedly did not receive the necessary forms he personally wrote to the Dallas County District Attorney seeking a dismissal of the pending charges on January 21, 1986. On January 31, 1986 appellant mailed a second letter, which had been notarized, to the Dallas County Clerk and the Dallas County District Attorney requesting a speedy trial and disposition of all charges in that county.

From February 25, 1986, to April 18, 1986, appellant was taken from Arizona to Kansas for resolution of federal charges in Kansas. Appellant was finally picked up from Arizona by Dallas County authorities on April 23, 1986, and booked into the Dallas County jail on May 1, 1986. Upon arrival in Dallas, appellant was transferred to Collin County on two separate occasions to face pending charges in that county and then returned to Dallas County. There is also stipulated testimony that there were twenty-seven days of agreed continuances regarding the Dallas charges. Appellant was actually brought to trial on the Dallas charges on February 9, 1987.

Appellant filed motions to dismiss the Dallas indictment based on violations of the Speedy Trial Act as well as Articles III and IV of the IAD. The State maintained it had been ready to try this case since the announcement of ready was filed on May 25, 1984. The trial court denied appellant's motions to dismiss from which he appeals. However, appellant does not allege a violation of Article IV of the IAD on appeal. Therefore, we do not consider the applicability of Article IV. We note also that appellant's assertion that he was denied a speedy trial is statutorily based and does not raise federal or state constitutional challenges.

## I. THE SPEEDY TRIAL ACT

■ Appellant contends, in part, that the trial court erred in denying his motions to dismiss thereby violating the Speedy Trial Act. However, the Court of Criminal Appeals has recently held that by adopting the Act the legislature violated Article II, section 1 of the Texas Constitution (separation of powers doctrine) by encroaching upon the prosecutor's exclusive prosecutorial discretion in preparing for trial. *Meshell v. State,* 739 S.W.2d 246, 257 (Tex. Crim.App.1987). Therefore, the Act and its encroachment mechanism, article 28.061 of the Code of Criminal Procedure, are void, *see Meshell,* 739 S.W.2d at 257, and cannot provide appellant any relief.

## II. THE INTERSTATE AGREEMENT ON DETAINERS ACT

Appellant also contends that the trial court erred in denying his motions to dismiss for violations of Article III of the IAD. TEX.CODE CRIM.PROC.ANN. art. 51.14, Article III (Vernon 1979). In response, the State argues that because the IAD is similar to the Speedy Trial Act it should be declared unconstitutional in that it violates the separation of powers doctrine based on the reasoning in *Meshell v. State, supra.* The State urges this Court to declare the IAD unconstitutional because it deprives the prosecution of its exclusive discretion in preparing cases for trial, because it deprives the judges of their exclusive discretion in setting (criminal) cases for trial, and because Article V of the IAD mandates dismissal if Article III is not met. It is well settled that the constitutionality of a statute will not be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised. *Smith v. State,* 658 S.W.2d 172, 174 (Tex.Crim.App.1983). Consequently, if we hold that there was no violation of Article III, the constitutional question becomes moot. Therefore, we must now determine whether appellant's rights were violated under Article III of the IAD.

The IAD was enacted to provide a method whereby a prisoner in another state or federal institution could require disposition of charges pending against him. The IAD is a compact among member states, the United States, the territories and possessions of the United States, the District of

Columbia, and the Commonwealth of Puerto Rico. The purpose of the IAD as set out in Article I is as follows:

> The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges....

TEX.CODE CRIM.PROC.ANN. art. 51.14, Article I (Vernon 1979).

The IAD provides that a prisoner subject to a detainer from another state is entitled to be brought to trial within 180 days after he delivers to the charging state written notice of his place of imprisonment and his request for a final disposition of the indictment against him. *Id.* at Article III(a). The written request for final disposition is to be sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with a certificate to the appropriate charging official and court. *Id.* at Article III(b). The IAD further provides that, in the event an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III (180 days), the appropriate court where the charge is pending shall enter an order dismissing the indictment with prejudice and the detainer based on the indictment shall no longer be in effect. *Id.* at Article V(c).

Appellant bases his demand for dismissal on two violations of the IAD. First, he maintains that Arizona prison officials violated the notice provision of Article III(c), which requires the official having custody of the prisoner to promptly inform him of the contents of any detainer lodged against him and also inform him of his right to make a request for final disposition of any pending charges on which the detainer is based. *Id.* at Article III(c). Second, appellant contends that Dallas County authorities violated the speedy disposition provision of Article III(a) by not trying him within 180 days of receipt of his demand for final disposition. *Id.* at Article III(a).

## A. ARIZONA AUTHORITIES

 In the instant case, the trial court found that Dallas County was notified of appellant's request for final disposition on February 4, 1986, the anticipated date of receipt of appellant's letter dated January 31, 1986. However, appellant contends that he began trying to invoke the IAD immediately after he was sentenced in Arizona.[1] After appellant was sentenced he was transferred to the Arizona Department of Corrections Intake Center on July 19, 1985. One week later, appellant was presented with a Dallas County warrant and a federal detainer from Kansas by a counselor at the intake center. The counselor incorrectly advised appellant that he could not take any action to obtain final disposition of the outstanding charges until he was transferred to his final destination within the Arizona correctional system.

Appellant was transferred to the Arizona State Prison, his final destination, on September 3, 1985. Upon arrival, appellant requested the institutional forms needed to request a speedy disposition. After being told that there were no detainers lodged against him, appellant provided copies of the detainers to an Arizona State Prison counselor. This counselor then informed appellant that he would be notified when the necessary forms were ready. Despite appellant's inquiries during the following months, no forms or instructions from the Arizona officials were forthcoming.

Around January 5, 1986, appellant spoke with an Arizona State Prison supervisor who once again assured appellant that the necessary forms would be available in the near future. Appellant then wrote the appropriate Dallas County authorities on Jan-

---

1. We note that Arizona is a party state and the sending state under the Interstate Agreement on Detainers Act. ARIZ.REV.STAT.ANN. §§ 31–481, 31–482 (1986).

uary 21, 1986, and January 31, 1986, regarding the pending charges in that county.

Appellant seeks to have the Dallas charges dismissed because the Arizona authorities allegedly violated the IAD. Appellant complains that he was denied his rights under the IAD because he was misinformed by the counselor at the Arizona intake facility and because the Arizona prison officials failed to provide him with the proper forms or instructions needed to contact Dallas County. Accordingly, appellant argues that, but for the events which occurred in Arizona, he would have been able to request a speedy disposition of the Dallas charges in July of 1985 rather than January of 1986.

Admittedly, the delays relied on by appellant prior to his written notification to Dallas County were occasioned by events or omissions occurring in Arizona. Although appellant argues that the Texas charges should be dismissed because of the Arizona delays, he does not allege that Texas authorities contributed to these delays.[2] Thus, the question presented is whether an accused imprisoned in a penal institution of another state, who has a detainer lodged against him for criminal charges pending in Texas, is entitled to dismissal of the Texas charges when the authorities of the retaining institution give him incorrect information and fail to provide him with the forms necessary to the assertion of his right to request final disposition of the pending charges pursuant to the IAD. The question we address is one of first impression in Texas. However, other jurisdictions have considered similar issues and have reached conflicting results.

Appellant urges this Court to follow the Delaware Supreme Court's holding in *Pittman v. Delaware*, 301 A.2d 509 (Del.Supr. Ct.1973). In that case, the defendant, who was imprisoned in Maryland, received a Delaware detainer lodged against him. The defendant sent a handwritten request to a Maryland prison official asking that detainer forms be filled out so that he

could return to Delaware for a speedy trial. *Id.* at 510. Prison officials incorrectly informed the defendant that Delaware was not a party state to the IAD and that he should write to Delaware prosecutors directly. The defendant then wrote directly to the Attorney General's office in Delaware on several occasions; however, he did not receive a response. *Id.* at 511.

The *Pittman* court determined that the Maryland officials misinformed the defendant regarding his rights under the IAD and the Delaware officials negligently ignored the defendant's request for final disposition. *Id.* at 513. The pending Delaware charge was dismissed because the court held that the delays in bringing the defendant to trial were occasioned by "official administrative errors." *Id.* at 514.

The *Pittman* decision is based on the holding that *both* the sending state and the receiving state contributed to the delays in bringing the defendant to trial. The Colorado Court of Appeals has gone one step further, however, by holding that the receiving state's charge should be dismissed when the sending state (prison officials) violates the IAD although the receiving state is in compliance. *Colorado v. Lincoln*, 42 Colo.App. 512, 601 P.2d 641 (1979).

In *Colorado v. Lincoln*, the defendant was incarcerated in an Idaho prison when a Colorado detainer was lodged against him. *Id.* 601 P.2d at 642. The defendant sought to have the Colorado prosecution dismissed because the Idaho prison officials had neither notified him of the existence of the detainer nor advised him of his right to request final disposition of the charges. *Id.*

Initially, the court recognized that the IAD does not provide an express sanction for the failure of the sending state to comply with the statute. *Id.* at 643. Therefore, the question is whether the prisoner or the receiving state should suffer the penalty for the sending state's omissions. *Id.*

---

**2.** Appellant contends that *once* the Texas authorities received his request for final disposition on

February 4, 1986 they failed to bring him to trial within 180 days as required under the IAD.

The Colorado court held that the receiving state must bear the burden of assuring that the IAD provisions are enforced in the sending state. Although the serious consequence of dismissal will result, the court reasoned that "pressure [will] soon be brought to bear on the negligent officials from their administrative superiors as a result of protests from the other state." *Id.* at 644 (quoting Note, Convict's Right to a Speedy Trial, 18 RUTGERS L.REV. 828, 862 (1964)). The court concluded that only in this way will the purpose of the IAD be achieved by requiring the party states to learn of their duties under the IAD and to perform them conscientiously. *Colorado v. Lincoln,* 42 Colo.App. 512, 601 P.2d 641, 644 (1979); *see also People v. Esposito,* 37 Misc.2d 386, 394, 201 N.Y.S. 2d 83, 90 (Queens County Ct.1960).

Conversely, several jurisdictions have concluded that an innocent receiving state should not be forced to dismiss criminal charges because a sending state violates the IAD. *See Com. v. Gonce,* 320 Pa.Super. 19, 466 A.2d 1039, 1044 (1983); *Kansas v. Clark,* 222 Kan. 65, 68–70, 563 P.2d 1028, 1032 (Sup.Ct.1977); and, *Coit v. State,* 440 So.2d 409, 412 (Fla.App. 1 Dist. 1983). Most recently, the Washington Court of Appeals held that relief for the defendant because of the sending state's delays is not available under any express provision of the IAD. *Washington v. Barefield,* 47 Wash.App. 444, 453–55, 735 P.2d 1339, 1345 (1987).

In *Barefield,* federal prison officials failed to inform the defendant of his right to request final disposition of a Washington detainer until one year after it had been filed. Moreover, once the defendant gave his letters of request to a prison official and asked that the necessary certificate and letters be forwarded to Washington, the official failed to comply. *Id.*

In denying the defendant relief, the court noted that dismissal of the receiving state's charge is authorized in only three instances under the IAD:

(1) if, after a prisoner has made the required request pursuant to Article III, trial does not occur within the required 180 days;

(2) when trial does not occur before the prisoner, having been transferred to the receiving state, is returned to the sending state; or

(3) when the receiving state fails or refuses to accept temporary custody of the prisoner.

*Id.* The Washington court construed the IAD and concluded that the legislature intended sanctions to be applied only where they are expressly allowed by the statute. *Id.* 735 P.2d at 1346. The court stated that "[t]o conclude otherwise would result in ad hoc determinations by individual member states determining whether officials had acted 'promptly'." *Id.* Hence, the court held that it is for Congress, not the courts, to enunciate the sanctions to be imposed when the sending state violates the IAD. *Id.*

Having considered the foregoing cases, we conclude that the receiving state's charges should not be dismissed except as expressly allowed under the IAD. Inasmuch as the legislature chose to specify situations when dismissal is the appropriate remedy, the courts should not expand that relief to cover possible procedural errors made by another state's prison officials. *See Pennsylvania v. Gonce,* 466 A.2d at 1044. Moreover, we agree that "a legislative enactment providing for a speedy trial, with no sanction for failure to comply with the mandate, is generally construed as directory." *Kansas v. Clark,* 22 Kan. at 68–69, 563 P.2d at 1032. Although we may sympathize with appellant, we find no authority in the statute to warrant dismissal of the Texas offenses. Accordingly, we hold that in this case, the IAD does not mandate dismissal of the Texas indictment for delays which occurred prior to Dallas County's receipt of appellant's request for speedy trial.

### B. TEXAS AUTHORITIES

■ Appellant next alleges that Dallas County authorities violated Article III(a) of the IAD by not trying him within 180 days of receipt of his request for a speedy trial.

Appellant's complaint stems from the trial court's exclusion of the 141-day period that appellant spent in the Collin County jail.

The trial court found that Dallas County authorities received appellant's request for final disposition on February 4, 1986, and tried appellant 369 calendar days later on February 9, 1987. However, of the 369 days, the trial court concluded that the following 221 days were excusable:

1.) February 25, 1986 to April 18, 1986 (53 days) representing the period that appellant was held in Kansas on a federal detainer.

2.) June 9, 1986 to June 17, 1986 (9 days) and July 29, 1986 to December 8, 1986 (132 days) representing the two occasions that appellant was transferred and held in Collin County.

3.) 27 days, representing stipulated testimony of several agreed continuances.

Thus, the trial court found that, excluding the excused days, appellant was brought to trial 148 days after his request for final disposition was received pursuant to the IAD.

On appeal, appellant does not challenge the trial court's exclusion of the 53 days that he was retained in Kansas on a federal detainer or the 27 days of agreed continuances. Instead, appellant's complaint is based on the contention that the State should be charged with the 141-day period that he was undisputedly in Collin County because no evidence was presented to explain why this period was excusable. We disagree.

The record reflects that 132 days of the 141 day period are covered by eight agreed continuances. Article III(a) of the IAD provides that "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." TEX.CODE CRIM.PROC.ANN. art. 51.14, Article III(a) (Vernon 1979). Six of the eight continuances note that appellant was in Collin County and one continuance expressly states that

the parties agreed to reset the case because the "defendant was in Collin County jail pending four (4) felony cases." We hold that these notations constitute some evidence of good cause to grant the continuances.

As to the seventh and eighth continuances for which no reason was given, when both parties agree to the continuance and no other explanation for it is provided by record, the continuance is deemed necessary and reasonable.[3] *Huffines v. State,* 646 S.W.2d 612, 614 (Tex.App.—Dallas 1983, pet. ref'd). Thus, we hold that the agreed continuances explain why 132 days of the 141-day period were excusable. Even if we charge the state with the other nine days, appellant was still tried within the 180-day limit of the IAD.

Because we hold that appellant's right to a speedy trial under the IAD was not violated, we do not reach the issue of the statute's constitutionality. We overrule appellant's sole point of error.

AFFIRMED.

WHITHAM, J., concurs.

WHITHAM, Justice, concurring.

I concur in the result. The majority concludes that "the IAD [Interstate Agreement on Detainers Act] does not mandate dismissal of the Texas indictment for delays which occurred prior to Dallas County's receipt of appellant's request for speedy trial." Thus, the majority holds that the receiving state should not be penalized with the mistakes of the sending state in complying with the IAD and should not be required to dismiss an indictment because of the sending state's mistakes. I disagree. In my view, the receiving state, having set the provisions of the Agreement in motion, must bear the burden of assuring that its provisions are enforced in the sending state. *People v. Lincoln,* 42 Colo. App. 512, 601 P.2d 641, 644 (1979). Thus, because the receiving state, Texas, freely entered into a compact with the sending

---

**3.** Although the *Huffines* court construed Article IV of the IAD, the pertinent language discussed

is identical to the language in Article III.

state, Arizona, for the benefit of the prisoner, it cannot now complain of the sending state's acts or omissions to the detriment of the prisoner by penalizing the prisoner for those mistakes, even though the receiving state did not contribute to those mistakes.

I am not persuaded by the majority's argument that because the Agreement fails to expressly provide sanctions for mistakes of the sending state, the receiving state should not be penalized. This reasoning works contrary to the purpose of the Agreement: to encourage the expeditious and orderly disposition of such charges. TEX.CODE CRIM.PROC.ANN. art. 51.14, Article I (Vernon 1979). Conversely, I am persuaded by the argument that the remedial nature of the Agreement requires that it should be construed liberally in favor of those it was intended to benefit. *See Nelms v. State*, 532 S.W.2d 923, 927 (Tenn. 1976). The purpose of the Agreement requires that the adverse consequences of official oversights be visited upon the prosecution, not upon the prisoner. Only in this way can the goals of the Agreement be achieved by requiring the officials concerned to learn of their duties under the Agreement, and to perform them conscientiously. *Colorado v. Lincoln*, 601 P.2d at 644, citing *People v. Esposito*, 37 Misc. 2d 386, 394, 201 N.Y.S.2d 83, 90 (Queens County Ct.1960). Moreover, the interests of interstate comity, sparked by loud complaints from the indicting state, would soon compel the upper echelon officials in the imprisoning state to bring the negligent correctional officials into line. Note, *Convict's Right to a Speedy Trial*, 18 Rutgers L.Rev. 828, 863 (1964). Finally, charging the receiving state with the sending state's mistakes is more sensible than charging the prisoner for those mistakes because the officials are generally in a better position to advance the case and to secure cooperation from each other than is the prisoner. *State v. Moore*, 598 S.W.2d 586, 590 (Mo. Ct.App.1980).

Since I conclude that the receiving state should be charged with the sending state's mistakes, it follows that if the Arizona prison officials complied with Article III(c) of the Agreement, the date the 180 days would have actually commenced running is on or near July 26, 1985. This is the approximate date on which the majority tells us "[t]he counselor incorrectly advised appellant that he could not take any action to obtain final disposition of the outstanding charges until he was transferred to his final destination within the Arizona correctional system."

Where a defendant files a timely motion to dismiss, based on noncompliance by officials of the sending state with the provisions of Article III(c) of the Agreement, supported by documentation showing that a detainer from the receiving state was lodged against him, the *burden rests upon the receiving state* to establish compliance with the Agreement's provisions by the sending state. *See People v. Lincoln*, 601 P.2d at 644. I find that the State failed to meet this burden. In fact, the State offers no evidence to refute appellant's testimony that from the period of July 1985 until January 31, 1986, the Arizona prison officials failed to comply with the agreement by not allowing appellant to notify the Dallas County authorities. Thus, the trial court erred in its finding that "there was no evidence of the State of Arizona depriving [appellant] of any right to file under Article 51.14 prior to [January 31, 1986]." The majority even agrees that "[a]dmittedly, the delays relied on by appellant prior to his written notification to Dallas County were occasioned by events or omissions occurring in Arizona." Furthermore, I conclude that there is no evidence to support the trial court's finding that the Arizona authorities did not deprive appellant of his right to file prior to January 31, 1986. The State put on no evidence to the contrary, so it clearly failed to meet its burden of establishing compliance. *See People v. Lincoln*, 601 P.2d at 644. Thus, the proper remedy is dismissal of the indictment against appellant in accordance with Article V(c). *See People v. Office*, 126 Mich.App. 597, 337 N.W.2d 592, 595 (1983). The 148 days that the trial court found had actually elapsed under Article III of the Agreement from February 4, 1986, to February 9, 1987, com-

bined with the uncontested six-month period from July 1985 to January 31, 1986, satisfies the 180–day requirement for dismissal of an indictment under the IAD.

Having concluded that the state violated the IAD and that the indictment should be dismissed under the Act, I now address the constitutionality of the IAD. *See Smith v. State*, 658 S.W.2d 172, 174 (Tex.Crim.App. 1983). To my mind, the Act is unconstitutional as a violation of the separation of powers doctrine for the same reasons expressed in *Meshell v. State*, 739 S.W.2d 246 (Tex.Crim.App.1987). Both Acts *attempt* to provide procedural guidelines for statutory enforcement of a defendant's constitutional right to a speedy trial. *See Meshell v. State*, 739 S.W.2d at 255; *cf.* Interstate Agreement on Detainers Act, Article I. Like the Speedy Trial Act, the IAD violates the separation of powers doctrine because it deprives the prosecution of its exclusive discretion in preparing cases for trial and deprives the judges of their exclusive discretion in setting criminal cases for trial by mandating dismissal if Article III is not met. No consideration is given to the factors determining whether appellant has been deprived of his constitutional right to a speedy trial, particularly whether or not appellant has been prejudiced by the delay. *Cf. Meshell v. State*, 739 S.W.2d at 256–57. Because no other constitutional provision expressly grants the Legislature the power to control a prosecutor's preparation for trial or the judge's power to set a case for trial, I must conclude that the Legislature, by providing for such a right in the present case, violated the separation of powers doctrine. *Cf. Meshell v. State*, 739 S.W.2d at 257. Thus, I would hold that the Interstate Agreement on Detainers Act, Article 51.14 of the Texas Code of Criminal Procedure, is unconstitutional as a violation of the separation of powers doctrine. TEX. CONST. art. II, § 1.

As the majority correctly noted, the Speedy Trial Act was held unconstitutional by *Meshell v. State* and affords appellant no relief. Since I would hold the Interstate Agreement on Detainers Act unconstitutional, it follows that this Act also affords appellant no relief. Therefore, the trial court did not err in denying appellant's motions to dismiss. Consequently, I agree that we must overrule appellant's sole point of error and affirm the trial court's judgment.