Michael E. BROWNLOW,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 17219.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 22, 1991.

Emmett D. Queener, Columbia, for movant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

MAUS, Judge.

Count I of an information charged movant with committing murder in the second degree in that on the 25th day of October, 1988, he knowingly caused the death of Michelle Luttjohann by striking and shaking her. § 565.021.1(1). Count II of that information charged the defendant committed sodomy on the 20th day of October, in that he had deviate sexual intercourse with Michelle Luttjohann by the use of forcible compulsion. As the result of a plea bargain, movant entered an *Alford* plea of guilty to the charge of second degree murder. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The charge of sodomy was dismissed. Movant was sentenced to imprisonment for life. Within the prescribed time, movant

filed a pro se motion for postconviction relief under Rule 24.035. A first amended motion was timely filed. A second amended motion was untimely filed. After an evidentiary hearing, the motion court denied relief. Movant appeals.

Movant was initially represented by contract Public Defender Calvin Holden. He represented the movant at movant's preliminary hearing. On the movant's behalf, he entered a plea of not guilty and not guilty by reason of mental disease or defect. A mental examination was had as provided in § 552.030. The report of that examination was movant was competent to assist in his own defense and at the time of the alleged offense movant was mentally competent. Holden then filed a motion for a second examination as provided in § 552.030. After he filed this motion, Holden's contract with the Public Defender expired. Special Public Defender S. Dean Price then assumed movant's defense. As a part of the plea bargain, the motion for a second examination was withdrawn at the time the movant pled guilty.

After Price took Christopher Gullett's deposition and had knowledge of the medical evidence, Price told movant he had little chance of being acquitted. He recommended to the movant that he enter into a plea bargain. The plea bargain reached is stated, supra.

The following is a sketch of the background for movant's plea of guilty, gathered from the record and the assistant prosecuting attorney's statement of the facts at the plea hearing. Melinda Gullett was the mother of Christopher Gullett and the victim Michelle Luttjohann. At the time of the offense, Christopher was eight years old and Michelle was two years old. The movant was Melinda's "live-in boyfriend". He was a heavy drug user. Melinda worked at a local manufacturing plant from 3:00 p.m. to 11:00 p.m. The children were usually cared for by Melinda's parents. However, on October 25, 1989, they were unable to do so. When Melinda left for work, the children were left in the care of movant.

When Melinda returned home, a little after 11:00 p.m., she found Michelle lying on a bed, in a battered condition and barely breathing. Melinda took Michelle to a hospital. The admitting diagnosis was that Michelle was suffering from severe brain damage due to non-accidental trauma. Despite medical efforts, Michelle died approximately four hours after her admission. It was the opinion of the doctor who performed an autopsy, that Michelle died as the result of blunt trauma and shaking injuries. It was also the medical opinion that the injuries which caused Michelle's death occurred within two or three hours of her admission to the hospital.

As stated, Price took the deposition of Christopher Gullett. Christopher testified he was awakened by noises from the living room of the house where he lived with his sister, mother and movant. He got out of bed, went to the door of his bedroom and peered out into the living room. He saw the movant striking Michelle around the face and body eighteen or nineteen times. He saw movant shake Michelle. The movant then grabbed Michelle by her ankles, threw her to the floor and struck her with a hammer. Michelle curled up on the floor and cried, but movant continued to strike and kick her. Christopher did not attempt to interfere because he was afraid. Movant picked Michelle up, wrapped her in towels and took her into Christopher's room. He told Christopher to watch Michelle while he went to call Melinda.

At the plea hearing, movant stated he had no dispute with the state's statement of the facts. He had no recollection of the events because of his consumption of drugs. He acknowledged the evidence against him was overwhelming and established that he understood the nature of an *Alford* plea.

Movant recites four points on appeal. Three of those points assert the motion court erred in denying his motion under Rule 24.035 because the record establishes that the movant's plea of guilty resulted from constitutionally ineffective assistance of counsel. The basic standard by which such claims of ineffective assistance are to

be measured has been clearly and definitively stated.

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable...." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

Also see *Sanders v. State*, 738 S.W.2d 856 (Mo. banc 1987).

The application of that basic standard has resulted in subsidiary principles applicable to specific categories of claims of such ineffectiveness. Those principles include the following.

"When a claim of ineffectiveness of counsel is made on the ground that counsel has failed to locate and present witnesses, as here, movant must show that the witnesses could have been located through reasonable investigation, that the witnesses would have testified, if called, and that their testimony would have provided a viable defense. *Hogshooter v. State*, 681 S.W.2d 20, 21 (Mo. App.1984). Otherwise stated, when ineffectiveness of counsel is alleged for failure to contact potential witnesses, movant must show what specific information the counsel failed to discover, that reasonable investigation would have disclosed that information and that the information would have aided his position. (Citations omitted.)" *Bibbs v. State*, 784 S.W.2d 315, 317–318 (Mo.App.1990).

"In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea...." *Hill v. Lockhart*, 474, U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985).

■ Further, a movant cannot prevail on a claim of ineffectiveness because counsel failed to take action such as filing or pursuing a motion, tendering an instruction, or making an objection when such action would have been rejected. *Powers v. State*, 673 S.W.2d 506 (Mo.App.1984); *Meyer v. State*, 770 S.W.2d 385 (Mo.App.1989).

Well-established rules exist to determine whether the standard for establishing constitutionally ineffective assistance of counsel has been met. Those rules include the following.

"[A] person seeking postconviction relief must plead facts, not conclusions, which if they were true would warrant relief, and those facts must not be refuted by the record and have resulted in prejudice. *Boggs v. State*, 742 S.W.2d 591, 594 (Mo. App.1987)." *Cash v. State*, 778 S.W.2d 779, 780 (Mo.App.1989).

"... The movant has the burden of proving his grounds for relief by a preponderance of the evidence." Rule 24.-035(h).

"The credibility of a witness is for the motion court's determination and it may reject the testimony of the movant or any other witness. (Citation omitted.)" *Witcher v. State*, 789 S.W.2d 123, 124 (Mo.App.1990).

Relief will not be granted upon the basis of speculation.

"No evidence to support the allegation was introduced at the motion hearing. We are left with no more than appellant's hopeful speculation; it does not bear any indicia of prejudice." *State v. Schaal*, 806 S.W.2d 659, 669 (Mo. banc 1991).

"As to the issue of witnesses, conjecture or speculation is not sufficient to estab-

lish prejudice." *Davis v. State,* 786 S.W.2d 223, 225 (Mo.App.1990).

The scope of appellate review has been clearly limited.

"Appellate review of the trial court's action on the motion filed under this Rule 24.035 shall be limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 24.035(j).

Also see *Mallett v. State,* 769 S.W.2d 77 (Mo. banc 1989), cert. denied, 494 U.S. 1009, 110 S.Ct. 1308, 108 L.Ed.2d 484 (1990).

Movant's first point is he received ineffective assistance of counsel in that trial counsel failed to investigate and locate potential defense witnesses and to depose the eyewitness in a timely fashion. Price testified he planned to show that movant was at different places during the period in question and did not have exclusive care of Michelle. See *State v. Schaal,* supra, concerning the admissibility of such evidence. Price's investigators looked for witnesses to establish movant's presence at Boatmen's Bank, a grocery store, an optical shop and an electronics store. No potential witnesses were found.

Movant's point does not identify the potential witnesses not investigated nor state what their testimony might have been. Only by indulging movant's inadequate statement of this point and looking to his argument, can it be learned that he asserts Holden was ineffective because he did not locate such witnesses. In his brief, he states:

"Appellant identified for Mr. Price where witnesses in support of that theory were, but due to the passage of time no witnesses were found. Appellant gave Holden the information regarding these witnesses when he represented appellant, but Holden did not pursue an investigation. The disappearance of witnesses who could support appellant's defense greatly prejudiced appellant and forced him to enter an Alford plea because he was unable to present a defense on his behalf."

This argument is typical of movant's assertion of speculation as fact. As stated, at the plea hearing the state made a detailed statement of the facts. This statement included the fact that at approximately 6:00 p.m., movant, Michelle and Christopher went to the home of Dayln Winter. Dayln briefly "baby sat" with the two children. When the children later left with movant, Michelle was in an uninjured condition. When asked if he disagreed with the statement of the assistant prosecuting attorney, the defendant replied, "No sir." When that question was asked of Special Public Defender Price, Price replied,

"No, Your Honor. In view of the investigation that was conducted after my office became the attorney of record on this case, which was the first part of September, I believe that if we proceeded to trial the State's evidence would be exactly as the Assistant Prosecuting Attorney has recited to the Court."

At the motion hearing, the movant did not personally, nor through any witness, suggest the identity of a witness whose testimony would provide him with a viable defense. His bare assertion that Holden could have found such a witness is pure speculation. It does not meet his burden of proof as set forth above. *Bibbs v. State,* supra. Also see *Davis v. State,* supra.

Under the first point, in a similar vein, movant argues that Holden was ineffective in not taking the deposition of Christopher at an earlier date. He asserts that this delay allowed Christopher to change his testimony by the time he was deposed by Price. Movant supports this contention only by his own testimony at the sentencing hearing.

"Well, he didn't depose witnesses, the State's witnesses, which allowed the State to—in my acknowledgement, induce, coerce, or bribe each and every one of their witnesses. And, to my acknowledgment, he did not go and contact the people that I was around that night which might—you know, I pled not guilty to this by the Alford—pled guilty to it for the Alford plea, which means that I didn't have no defense which—because Mr. Holden didn't depose witnesses and the State was allowed to—

allowed Chris Gullett to change his testimony or statement, whatever you want to call it, five times.

I have the evaluation report from Park Central Hospital on Chris Gullett and states he does not know what happened at this time and, if anything happened, Mr. Brownlow would not have been responsible. Would have been an accident. But since the State had him in a children's facility to where he was around other children and said cases of such, he changed his story several times."

Movant has not supplied the evaluation report referred to. He has not supplied the deposition of Christopher. If Christopher had made prior inconsistent statements, those statements could have been, and undoubtedly were, used to cross-examine and impeach him upon his deposition. Nonetheless, Price acknowledged that Christopher would testify as stated by the assistant prosecuting attorney. Movant's claim that he would have testified to the contrary if his deposition had been taken earlier is without factual foundation. Movant's first point is denied.

■ Movant's second point is that Price rendered ineffective assistance of counsel in not pursuing the motion for a second psychiatric examination filed by Holden. This point must be considered in context. Holden testified he filed the initial motion because the victim was two years old. He acknowledged the report resulting from that motion was movant was competent to stand trial and competent at the time of the offense. Holden said that he filed the second motion basically to cover himself because he pled movant not guilty and not guilty by reason of mental disease or defect. Holden also took into account the fact that movant exhibited bizarre behavior in another case in which Holden was representing the movant. However, the psychiatric report in that other case, which was also before the court in the subject case, found movant competent to stand trial and competent at the time of that offense. In Holden's opinion, movant was competent. Price was also of the opinion that movant

was competent to assist in his own defense and at the time of the offense.

At the plea hearing, in response to an inquiry by the court, the following colloquy took place.

"MR. PRICE: That is correct, Your Honor. The finding of the mental examination was that he was mentally and emotionally able to help me in his defense and understand the proceedings against him. And also he was not suffering from any mental disease or defect at the time that these crimes were alleged to have happened which would exclude his responsibility for these crimes.

THE COURT: Mr. Brownlow, do you understand what my discussion just was?

THE DEFENDANT: Yes, sir.

THE COURT: And do you agree that—did you read the report of the doctor?

THE DEFENDANT: No, sir.

THE COURT: You never did?

THE DEFENDANT: No, sir. I—I can tell you I don't need a doctor to tell you I am not nuts.

THE COURT: Okay. I think that's pretty clear."

Movant did not at the motion hearing present a scintilla of evidence to establish that his own acknowledgement of competency was not accurate. At the plea hearing, movant acquiesced in his counsel's withdrawal of the plea of not guilty and not guilty by reason of mental disease or defect and the withdrawal of the motion for a second examination. He has utterly failed to prove that he was prejudiced by counsel's failure to pursue the second motion. Cf. *Shubert v. State*, 518 S.W.2d 326 (Mo.App.1975). Movant's second point has no merit.

Movant's third point is that Price rendered ineffective assistance of counsel in that at the sentencing hearing he did not, on movant's behalf, move the court to withdraw movant's guilty plea. Movant entered his guilty plea on January 26, 1990. The sentencing hearing was held on March 9, 1990. At the motion hearing, Price testified that he had talked with movant about withdrawing his plea of guilty on two occa-

sions. On the first occasion, movant did not want to withdraw that plea. The second occasion was the morning of the sentencing hearing. Price's testimony at the motion hearing included the following.

"A It was before the hearing began and while we were in the courtroom.

[By Mr. Cleek, Assistant Prosecuting Attorney:] Q What was the conversation between you and Mr. Brownlow?

A At that time he told me he wanted to withdraw his plea of guilty.

Q What did you explain to him?

A I told him that I also had an ethical duty to the Court, not just to him, and I didn't feel there were grounds for it and that if he wanted to withdraw his plea of guilty he'd have to make the motion on his own."

Movant did testify at length at the sentencing hearing. He did not indicate to the court that he wanted to withdraw his guilty plea. When asked if there was any legal reason sentence should not be pronounced against him, he replied "No, sir." Moreover, he acknowledged to the court that Price had done everything he had wanted him to do. Cf. *McKinzie v. State*, 790 S.W.2d 263 (Mo.App.1990). At the motion hearing, movant did not suggest any grounds upon which a motion to withdraw his guilty plea would have been sustained. See *State v. McCollum*, 610 S.W.2d 81 (Mo.App.1980). Under these circumstances, it cannot be said that Price rendered ineffective assistance by not making such a motion. See *Powers v. State*, supra. Movant's third point is denied.

Movant's fourth point is that the motion court erred in refusing to consider the one additional allegation of ineffective assistance contained in movant's second amended motion. The motion court found that it had no jurisdiction to consider that allegation because the second amended motion was filed outside the time limits imposed by Rule 24.035.

 The time limits imposed by Rule 24.035 are valid. *Day v. State*, 770 S.W.2d 692 (Mo. banc 1989), cert. denied, 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). The recent cases of *Sanders v. State*, 807 S.W.2d 493 (Mo. banc 1991) and *Luleff v. State*, 807 S.W.2d 495 (Mo. banc 1991), do not establish that the motion court should have considered the allegation in the second amended motion. Those cases hold that a defendant is entitled to have an amended motion considered. They do not establish that a movant is entitled to an untimely *second* amended motion. See *Griffin v. State*, 794 S.W.2d 659 (Mo. banc 1990). For that reason, movant's fourth point has no merit.

Moreover, the allegation of the second amended motion is that Price rendered ineffective assistance of counsel because he had a child near the age of Michelle. Even if considered, that allegation would provide no basis for relief. Movant's fourth point is denied and the judgment is affirmed.

FLANIGAN, C.J., and SHRUM, J., concur.