**Rodney CARR, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 17280.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 13, 1991.

Raymond L. Legg, Columbia, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

Rodney Carr ("movant") appeals from an order denying his pro se motion under Rule 29.15, Missouri Rules of Criminal Procedure (19th ed. 1988), to vacate his conviction of capital murder and sentence to life imprisonment without eligibility for parole for 50 years. The conviction resulted from trial by jury; the sentence was assessed by the judge because the jury was unable to agree on punishment. The judgment was affirmed on direct appeal. *State v. Carr*, 708 S.W.2d 313 (Mo.App.1986).

The circuit court denied movant's 29.15 motion after an evidentiary hearing. In this appeal, movant avers the circuit court erred in that (1) movant was abandoned by his post-conviction counsel, who failed to file an amended motion to vacate on movant's behalf, (2) movant received ineffective assistance from his defense counsel at the jury trial in two respects—discussed later—and (3) the circuit court failed to enter findings of fact and conclusions of law on one complaint of ineffective assistance against defense counsel.

Some of the evidence at the jury trial is pertinent to the issues we must address. A synopsis of that evidence follows.[1]

The murder victim was Tom Jackson, a corrections officer at the Missouri Training Center for Men at Moberly. He was stabbed to death July 3, 1983, at the institution during a melee involving officers and inmates.

---

1. By agreement of the parties, the circuit court in the 29.15 proceeding took judicial notice of the transcript of the jury trial.

Denver Halley, a captain in the custody force, testified he saw one Roberts, an inmate, holding Jackson. Halley attempted to pull Jackson free, but was unsuccessful because of resistance from Roberts and other inmates. Halley, who knew movant before the riot, testified he saw movant make a "lunging motion" toward Jackson, who was already covered with blood. Simultaneously with movant's lunge, Halley saw a "horrible distressful look" on Jackson's face, manifesting severe pain. Asked whether movant had a knife, Halley answered he saw none.

Robert Wayne Hess, an employee of the institution whose responsibilities included guard duty, was present during the riot. He testified movant had a knife in his hand. Hess avowed he saw movant stab Jackson while Jackson was being held by Roberts. Hess estimated he was three or four feet away when the blade entered Jackson's body. Hess agreed with Halley that Jackson was already bleeding. According to Hess, movant cut Hess' finger and stabbed him on the shoulder after stabbing Jackson. Hess recalled movant was wearing a blue tank top and gray pants. Asked whether movant had a mustache, Hess answered: "I think he did. I didn't pay no attention to mustaches."

Robert Wilson, a "zone patrolman" at the institution, was present during the insurrection. He recounted movant was holding a door to the "control center area." Wilson grabbed movant, who thereupon cut Wilson's left hand with a knife. Wilson released movant, who ran toward Jackson and "stuck Officer Jackson somewhere in the lower stomach." Wilson recalled there was already blood on Jackson's shirt. Inmate Roberts was holding Jackson. Wilson saw Jackson "double up" when movant lunged toward him. Asked what movant was wearing, Wilson replied gray trousers and a blue tank top.

Joe Vogelpohl, an inmate testifying for the State, avowed he saw another inmate, Robert Driscoll, assemble a knife in his cell before the riot. Vogelpohl related he later saw Driscoll stab Jackson once while inmate Roberts was holding Jackson.[2] Vogelpohl saw movant with a knife a few feet from Jackson. After Driscoll stabbed Jackson, Vogelpohl went back to a cell. Vogelpohl did not see movant stab Jackson.

Marion Humphrey, a corrections officer assigned to the housing unit where the riot occurred, testified he knew movant prior to the homicide. During the melee, Humphrey saw movant holding officer Hess. Movant "had a knife fixing to stick it in him." Humphrey seized a "ball bat" and knocked movant off Hess. The knife and movant fell to the floor, and inmates drug movant away.

Jimmy Jenkins, another inmate testifying for the State, related he saw movant stab a "brown shirt"[3] in the abdomen. Although Jenkins was uncertain of the victim's identity, he recalled the victim was being held by inmate Roberts.

An autopsy revealed three stab wounds in officer Jackson's chest and one in the abdomen. The pathologist was unable to determine whether all were caused by the same weapon.

Testifying in his defense, movant avowed he had a moustache and was wearing a shirt and "cutoff blue jeans" at the time of the melee. He denied stabbing anyone.

█ Movant's first point avers he was abandoned by the lawyer who represented him in the circuit court in the instant proceeding. We henceforth refer to that lawyer as "motion counsel." Movant points out motion counsel filed no amended motion to vacate as authorized by Rule 29.-15(e). Citing *Luleff v. State*, 807 S.W.2d 495 (Mo. banc 1991), movant insists we should reverse the order denying post-conviction relief and remand this case to the circuit court for a determination of whether

---

2. Driscoll and Roberts were each convicted of capital murder and sentenced to death for their roles in the homicide. *State v. Driscoll*, 711 S.W.2d 512 (Mo. banc), *cert. denied*, 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986); *State v. Roberts*, 709 S.W.2d 857 (Mo. banc), *cert. denied*, 479 U.S. 946, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986).

3. Prison jargon for guard.

motion counsel's failure to file an amended motion resulted from movant's negligence or intentional failure to act, or from motion counsel's dereliction.

The State responds that movant is not entitled to a *Luleff* remand in that movant had an evidentiary hearing in the circuit court ("the motion court") at which movant presented evidence on several issues including the two claims of ineffective assistance of counsel asserted in his second point.

The State reminds us of *Pollard v. State,* 807 S.W.2d 498 (Mo. banc 1991). There, a prisoner filed a motion per Rule 29.15. Later, his appointed lawyer filed an untimely amended motion. On appeal from an order denying relief, the prisoner maintained he was entitled to a *Luleff* remand. Rejecting the contention, the Supreme Court of Missouri noted that in regard to the other points presented on appeal, the belated amended motion did not differ from the pro se motion. 807 S.W.2d at 502[7]. Consequently, held the Court, even if the amended motion had been timely filed, the result would have been unaffected.

Movant acknowledges he presented evidence in the motion court on the two claims of ineffective assistance set forth in his second point. However, movant observes that *Kelly v. State,* 784 S.W.2d 270, 273[5] (Mo.App.1989), and *Rohwer v. State,* 791 S.W.2d 741, 744[6–8] (Mo.App.1990), hold claims not asserted in a timely 29.15 motion are waived. Therefore, says movant, the failure of motion counsel to file an amended motion asserting the claims of ineffective assistance set forth in his second point denied him "a full and fair hearing on all his claims." Accordingly, argues movant, he qualifies for a *Luleff* remand.

In weighing the contentions of movant and the State, we note that nowhere in movant's primary brief or reply brief is there any allegation that motion counsel failed to plead any grounds for relief except the two claims of ineffective assistance asserted in movant's second point. Therefore, the most a *Luleff* remand could accomplish would be the filing of an amended motion containing those two claims.

Given these circumstances, we have decided to eliminate the need for a *Luleff* remand by treating the two claims of ineffective assistance in movant's second point as having been pled in the pro se motion. Because evidence regarding those claims was presented in the motion court and movant does not aver motion counsel overlooked any evidence regarding them, our procedure affords movant all the relief a *Luleff* remand could provide. Movant's first point is therefore moot.

■ Movant's second point asserts he received ineffective assistance in two respects from his defense counsel at the jury trial. According to movant, the first instance was when defense counsel failed to present "evidence of a photograph" of a lineup of movant taken the day after the homicide. Movant maintains the photo would have rebutted evidence that at the time of the stabbing movant was wearing a blue tank top and did not have a moustache. This allegation has the following background.

During the testimony of guard Hess, the prosecutor inquired whether Hess, on the morning after the homicide, was asked to identify the person he saw stab officer Jackson. Defense counsel objected and requested a bench conference. Outside the jury's hearing, defense counsel stated he assumed the prosecutor intended to introduce a photograph of a lineup (State's Exhibit 25) in which Hess identified movant. Defense counsel directed the trial court to a handwritten statement by Hess revealing that before the lineup he was shown a few pictures of inmates, one of whom was movant. The prosecutor thereupon stated he "better not introduce" the exhibit.

In the motion court, movant testified he looked the same at the time of the lineup as he did at the time of the homicide. Movant explained he was locked in a cell immediately after the melee and could not have changed clothes before the photo was taken.[4] Movant avowed the photo would have

---

4. As reported earlier, in his trial testimony mov-

ant said he was clad in a shirt and cutoff blue

shown he had a moustache. This was important, said movant, because Hess made a statement the night of the homicide that the inmate who stabbed Jackson and him did not have a moustache and was wearing a blue tank top and gray pants. Movant added that Hess said the same thing later in a deposition.

At trial, Hess was asked whether he had testified on deposition that the inmate who stabbed him had no beard or moustache. Hess answered he did not recall that.

In the motion court, movant testified he told defense counsel to make sure the lineup photo was "entered into evidence at the trial." In his brief, movant asserts he was identified as one of the assailants based on the clothing he was wearing at the time of the homicide, hence Exhibit 25 would have rebutted the identification.

Movant misstates the record. Captain Halley testified he knew movant before the homicide. Guard Hess testified he was three or four feet from movant and officer Jackson when movant stabbed Jackson. Hess then wrestled with movant, receiving a cut finger and a stab wound in the shoulder. Movant released Hess when officer Humphrey struck movant with the bat. Humphrey, like Halley, knew movant before the homicide. Humphrey identified movant as the inmate holding Hess, armed with a knife—the inmate Humphrey struck with the bat. Patrolman Wilson, who identified movant as the inmate who cut Wilson's left hand with a knife before stabbing Jackson in the stomach, testified movant was later hit and was dragged away by other inmates. This coincided with Humphrey's testimony that inmates drug movant away after the blow by the bat.

During his trial testimony, movant conceded (a) Humphrey hit him with a baseball bat during the melee, and (b) "Wilson and them other officers know me because I was almost killed in my cell ... in '81."

The transcript references in movant's brief show only two witnesses testified movant was wearing a blue tank top and gray pants at the time of the melee: Hess

jeans when the melee occurred.

and Wilson. Inasmuch as Wilson—by movant's own admission—had known movant since 1981, it is obvious Wilson's identification of movant was not based on clothing. It may be Hess was one of the "other officers" who had known movant since 1981. However, even if he wasn't, Humphrey (who struck movant with the bat as movant held Hess) knew movant before the homicide. It is therefore apparent that the clothing movant was wearing at the time of the homicide was unimportant in his identification. As to the moustache, according to the statement of facts in movant's brief the only State witness who mentioned one was Hess. As noted earlier, he testified he thought movant had one. That was consistent with movant's testimony.

It is also noteworthy that Exhibit 25 is not with the record presented us. As observed earlier,[5] the motion court took judicial notice of the transcript of the jury trial. However, nothing in the record indicates Exhibit 25 was shown to the motion court. No exhibits were marked or received in evidence at the evidentiary hearing. Consequently, the only evidence as to what the exhibit would have shown regarding movant's clothing is movant's testimony in the motion court. The motion court was not required to believe that testimony. *McClure v. State*, 801 S.W.2d 801, 802[5] (Mo.App.1991); *Witcher v. State*, 789 S.W.2d 123, 124[2] (Mo.App.1990). The motion court was likewise free to disbelieve movant's testimony that he told defense counsel to offer Exhibit 25 in evidence.

Defense counsel, testifying in the motion court, said his trial file could not be found and he was unable to recall a tactical reason for not using the "line up" photo. However, as we have seen, defense counsel's objection to the photo at trial was that Hess had been shown a picture of movant before the lineup, arguably tainting the lineup identification. The prosecutor evidently felt defense counsel's objection was valid, as he abandoned his effort to present Exhibit 25.

5. Footnote 1, *supra.*

To prevail on a claim of ineffective assistance of counsel, a prisoner must show (1) his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances, and (2) the prisoner was thereby prejudiced. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). The prisoner bears the burden of proving his grounds for relief by a preponderance of the evidence. Rule 29.15(h); *Clemmons v. State*, 795 S.W.2d 414, 416[2] (Mo.App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1689, 114 L.Ed.2d 83 (1991). There is no ineffective assistance where the lawyer's conduct involves reasonable discretion in trial strategy, and it is the exceptional case where a court will hold a strategic choice unsound. *State v. White*, 798 S.W.2d 694, 698[9] (Mo. banc 1990).

Here, the motion court noted defense counsel employed trial strategy, and the motion court found no ineffective assistance of counsel. Our review of the motion court's order is limited to a determination of whether that court's findings and conclusions are clearly erroneous. Rule 29.15(j); *State v. Vinson*, 800 S.W.2d 444, 448 (Mo. banc 1990). They are clearly erroneous only if a review of the entire record leaves the reviewing court with a definite and firm impression that a mistake has been made. *Id.* at 448[8].

The record demonstrates defense counsel had a strategic reason for objecting to Exhibit 25, an exhibit the prosecutor intended to offer until he heard defense counsel's objection. We cannot say defense counsel's objection was unreasonable strategy. Furthermore, movant has failed to demonstrate prejudice from defense counsel's tactic. Accordingly, we hold the motion court did not err in rejecting the first complaint of ineffective assistance in movant's second point.

The second complaint of ineffective assistance in movant's second point is that defense counsel, without movant's authorization, waived movant's right to confront a witness. The point identifies the witness as "James Bolin." It is evident from movant's testimony in the motion court, the jury trial transcript, and the argument in movant's brief, that the witness was *John* Bolin, an inmate called by the State in rebuttal. Bolin refused to testify, stating he would "take the Fifth on anything." Defense counsel thereupon agreed the prosecutor could read from a deposition of Bolin in the *Driscoll* case.[6] The prosecutor read to the jury portions of the Bolin deposition, after which defense counsel read other portions.

This complaint of ineffective assistance is intertwined with movant's third point. That point avers the motion court erred in failing to enter specific findings of fact and conclusions of law, thereby denying movant "meaningful appellate review" of the denial of post-conviction relief. Specifically, the point states the motion court's findings and conclusions "failed to address the issue of [defense] counsel's waiver of [movant's] right to confront ... Bolin."

Rule 29.15(i) requires findings "on all issues presented." Movant's testimony in the motion court regarding the Bolin matter consumed several pages.[7] Although the Bolin matter was not pled in the pro se motion, we decided (in response to movant's first point) to treat the Bolin matter as though it were, thus eliminating the need for a *Luleff* remand. While the motion court made findings of fact and conclusions of law on numerous issues, the Bolin matter was not specifically addressed. Inasmuch as the motion court has already heard evidence on the matter, all that remains is for the motion court to enter findings of fact and conclusions of law on the issue.

The motion court's denial of relief is affirmed in all respects except movant's complaint of ineffective assistance regarding defense counsel's agreement that the prosecutor could present excerpts from the Bolin deposition. The order is reversed as to

6. Footnote 2, *supra.* Evidently, neither defense counsel nor movant was present when the deposition was taken.

7. Pages 12–18. The incident appears at pages 440–48 in the jury trial transcript.

that issue only, and the cause is remanded to the motion court for (a) findings of fact and conclusions of law on that issue alone, and (b) entry of an order granting or denying post-conviction relief, as appropriate.

PREWITT, P.J., and PARRISH, J., concur.