STATE of Missouri, Respondent,

v.

David LEISURE, Appellant.

David LEISURE, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 57006, 60476.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 4, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Sept. 14, 1992.

Application to Transfer Denied
Oct. 27, 1992.

Richard H. Sindel, Cheryl Rafert, St. Louis, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

Defendant appeals from his conviction in the Circuit Court of the City of St. Louis for capital murder. Defendant also appeals from the denial of his Rule 29.15 motion.

Among his many claims, defendant argues that the evidence was insufficient to convict him of capital murder. We view the evidence in the light most favorable to the verdict and disregard all contradictory evidence and inferences. *State v. Nelson*, 818 S.W.2d 285, 288 (Mo.App.1991).

## I. FACTS

Defendant, his cousins Paul and Anthony Leisure, and Fred Prater owned LN & P Towing in St. Louis. The Leisures were involved in crime activities in St. Louis. In the late 1970's, the Leisures and their associates struggled with another organized crime faction, led by James Michaels, Sr., to control management positions in two labor unions in St. Louis. The Leisures bombed the car of James Michaels, Sr., killing Michaels and intimidating the Michaels faction out of the unions. Defendant was convicted and sentenced to death in that bombing in a separate trial. *State v. Leisure*, 749 S.W.2d 366 (Mo. banc 1988).

On August 11, 1981, Paul Leisure was seriously injured by a bomb that exploded in his automobile. Shortly thereafter, defendant, Anthony Leisure, Ronald "Joe" Broderick, Fred Prater, John Ramo, and Charles "Obie" Loewe met and agreed to avenge the bombing of Paul Leisure. The Leisures eventually determined that members of the Michaels organization, including George Faheen, were responsible for the bombing of Paul Leisure. Members of the Leisure organization started looking for the responsible individuals so as to carry out their plan.

First, members of the Leisure organization drove to a farmhouse owned by the Michaels in Fredericktown, Missouri, where they planned to surprise and kill the inhabitants. However, the farmhouse was unoccupied. The Leisures next stalked Robert Peters at his place of work, but called off their plan to kill him. The Leisures' next plan was to shoot John Michaels at a restaurant Michaels frequented. This plan succeeded when, on September 11, 1981, defendant and Anthony Leisure shot John Michaels and a companion outside a restaurant. Defendant played a role in all of these plans except the Fredericktown incident.

The Leisures' next step in the plan to avenge the bombing of Paul Leisure was to find and kill George "Sonny" Faheen. Faheen was the nephew of James Michaels, Sr. and believed by the Leisures to be personally responsible for bombing Paul Leisure's car. Defendant and other members of the organization began to follow George Faheen. Through their surveillance, they learned Faheen lived at the Mansion House Apartments, worked at the Civil Courts Building, and drove a red Volkswagen. Defendant and Michael Kornhardt experimented with the wiring of a Volkswagen similar to Faheen's at LN & P Towing. Defendant enlisted the assistance of Fred Prater to find a wire in the car's electrical system which could be used to set off a dynamite cap. Defendant asked Prater whether the gas tank had an

electrical current which would set off a bomb when he tried to hook it up. Defendant and Kornhardt also looked for ways to unlock the doors on the vehicle.

On October 15, 1981, defendant and John Ramo went to the Mansion House to see if they could get into Faheen's car. Ramo served as a lookout and was told to shoot a guard if one came by. Defendant could not get into the car. Defendant and Ramo then left to meet Anthony Leisure, Broderick, and Raymond Flynn at a local restaurant. Flynn took two bags of dynamite from the trunk of his car and gave it to defendant. Flynn told defendant that it was enough dynamite to do two jobs. Defendant took the dynamite to LN & P Towing where he told Fred Prater to use ten sticks of the dynamite on Faheen and to keep the other ten.

On October 16, 1981, defendant, Ramo and Loewe watched Faheen walk to the Civil Courts Building from his downtown apartment. The three men returned to LN & P, where Ramo left the group. Defendant made a phone call while at LN & P. Then he told Loewe to bring the bomb to him at a south St. Louis parking lot. Defendant left LN & P with Michael Kornhardt. After their departure, Anthony Leisure called Prater and told him to "tell David to hold up." Prater gave the message to defendant, but defendant said, "No. We are going to go ahead and do it," meaning the bombing of Faheen's car.

At 12:20 p.m. on October 16, 1981, a bomb exploded in George Faheen's car. The resulting explosion and fire killed Faheen and damaged nearby cars. Analysis of evidence from the scene indicated that an explosive consistent with dynamite was placed in the front of the Volkswagen. Scratches on the passenger door handle lock were consistent with the use of a prybar.

After the bombing, defendant and others took steps to conceal their role in the crime. Soon after placing the bomb on Faheen's car, defendant met with Anthony Leisure and Broderick at a restaurant near downtown. Defendant told them that he took Loewe and Michael Kornhardt with him.

Anthony told defendant to get rid of his clothes and rub down with alcohol. Prater saw Kornhardt soon after the bomb exploded. Kornhardt told Prater that Loewe got away from the Mansion House "way early before the bomb went off." Kornhardt also said that he threw an electrical circuit tester and a wig in the river. The police soon issued warrants for Kornhardt's arrest and announced it to the media. Anthony Leisure had Prater ask defendant about Kornhardt, who was a friend of defendant's but otherwise an outsider to the Leisure organization. Defendant told Prater that he, Loewe, and Kornhardt placed the bomb on the car, but he had a wig on and the authorities could not have anything on them.

When Michael Kornhardt was arrested, defendant was concerned that he might also be arrested and briefly went into hiding. Defendant had Innes Anderson retrieve clothes for him. He told Anderson of his role in the Faheen bombing. Defendant explained that while he wired the car, Kornhardt served as a lookout.

Members of the Leisure organization posted bond for Kornhardt's release. Because of their fear that Kornhardt would turn and become a government witness, defendant, Paul and Anthony Leisure, and Fred Prater agreed that Kornhardt should be killed. Kornhardt was killed on July 30, 1982 by two Leisure associates.

Defendant was indicted for the murder of Faheen in a multiple count indictment in 1985. He was tried on the state charges following his trial and conviction on four federal counts. The other state charges and co-defendants were severed for trial. Defendant's trial for the Faheen murder began on April 24, 1989.

Prior to trial, defendant filed a motion in limine covering, among other things, references to other crimes, hearsay statements of co-conspirators, and government wiretaps. The court denied the motion in limine. Defendant was found guilty of capital murder on May 15, 1989. The jury was unable to agree on a punishment for the defendant, and the judge sentenced defendant to life imprisonment without probation

and parole. Defendant's motion for new trial was denied. He appeals.

Defendant filed a motion to vacate his sentence or judgment pursuant to Rule 29.-15. Defendant testified by deposition, and the court heard testimony from two witnesses and defendant's trial counsel. The motion·court issued lengthy and detailed findings of fact and conclusions of law denying all of appellant's points. He appeals from this denial.

## II. STANDARDS OF REVIEW ON APPEAL

Defendant raises fourteen points on appeal. These points contain arguments on direct appeal from his trial and his motion for post-conviction relief. Many of the points repeatedly raise issues of ineffective assistance of counsel and plain error. For brevity we will set out the applicable standards which guide our review.

Defendant asks us to review certain issues for plain error. Issues which are not preserved for appellate review may only be reviewed for plain error. *State v. Tarkington*, 794 S.W.2d 297, 299 (Mo.App.1990). Under the plain error standard, the error complained of must impact so substantially on the rights of defendant that manifest injustice or a miscarriage of justice will result if left uncorrected. Rule 29.12(b); *State v. Driscoll*, 711 S.W.2d 512, 515 (Mo. banc), *cert. denied*, 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986).

Defendant also claims that trial counsel was ineffective. A defendant claiming ineffective assistance of counsel has a two-part standard to meet. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). First, defendant must show that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Second, defendant must show that this deficiency prejudiced his defense. *Id.*

■■■ The motion court conducted a full evidentiary hearing on the claims in defendant's motion for post-conviction relief. The court issued its findings of fact and conclusions of law denying defendant's claims on all issues presented. On the appeal of a Rule 29.15 motion we are limited to a determination of whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 29.-15(j); *State v. Vinson*, 800 S.W.2d 444, 448 (Mo. banc 1990). They are clearly erroneous only if a review of the entire record leaves the reviewing court with a definite and firm impression that a mistake has been made. *Vinson*, 800 S.W.2d at 448. We note that there is no ineffective assistance where the lawyer's conduct involves reasonable discretion in trial strategy, and it is the exceptional case where a court will hold a strategic choice unsound. *Carr v. State*, 819 S.W.2d 84, 89 (Mo.App.1991). Nor is counsel ineffective for failing to take action such as filing or pursuing a motion, tendering an instruction, or making an objection when such action would have been rejected. *Brownlow v. State*, 818 S.W.2d 302, 304 (Mo.App.1991).

## III. DISCUSSION

### Point I

■■■ In his first point, defendant argues that the trial court was without jurisdiction because he was not tried within the time limits of the Agreement on Detainers (Agreement), § 217.490 RSMo.1986. Specifically, defendant claims that the State lost its jurisdiction to proceed against him because he was released to federal authorities before the State had disposed of all charges against him. Defendant's claim is without merit because defendant was a pre-trial detainee when he was transferred to federal authorities. The Agreement only applies to a "prisoner ... serving a term of imprisonment." § 217.490,· art. IV, cl. 1. The purpose of the Agreement is to maintain a continuity of prisoner treatment in rehabilitation programs by avoiding the disruptions caused by detainers on untried claims in other jurisdictions. § 217.490, art. I. Thus, the Agreement applies only to prisoners who have begun serving a sentence and not to pre-trial detainees.

*U.S. v. Bayless,* 940 F.2d 300, 303 (8th Cir.1991); *U.S. v. Hart,* 933 F.2d 80, 84 (1st Cir.1991).

Defendant further claims that the Agreement was violated when he was transferred from federal custody to state custody in May, 1985. The State secured defendant's custody through a writ of habeas corpus ad prosequendum. The Agreement does not apply when a federal prisoner's appearance in state court is obtained through a writ of habeas corpus ad prosequendum rather than a detainer. *Leisure v. State,* 828 S.W.2d 872, 877 (Mo. banc 1992); *Winningham v. State,* 765 S.W.2d 724 (Mo.App. 1989). There is no evidence that a detainer was used to secure defendant's appearance in state court. Despite defendant's efforts to continually supplement the legal file with new information on this point, we find no credible support for defendant's claim in the record before us.

■ Finally, defendant claims his counsel was ineffective for failing to present this issue to the trial court. Defendant's trial counsel testified that he did not present this argument because he could not find any evidence that a detainer was filed. Counsel cannot be ineffective for failing to make an objection or motion of extremely doubtful validity. *Daniels v. State,* 751 S.W.2d 399, 402 (Mo.App.1988).

### Points II & IV

We will address defendant's second and fourth points together due to the similarities of the issues they address. Defendant's second point on appeal claims that the trial court erred in denying his motion in limine and that counsel was ineffective for failing to preserve this issue for appeal. Defendant's fourth point is that the trial court erred in admitting government tapes from a wiretap on Paul Leisure's phone and from a listening device placed in LN & P towing. Specifically, defendant argues that the evidence complained of was inadmissible because it was prejudicial, hearsay, and evidence of other crimes.

At trial, defendant's counsel presented a motion in limine which was denied by the trial court. Counsel made continuing objections at trial to much of the evidence covered in the motion in limine. Nevertheless, counsel failed to preserve this issue in his motion for new trial. An issue which is not presented to the trial court in a motion for new trial is not preserved for appellate review and may only be reviewed for plain error. *Tarkington,* 794 S.W.2d at 299; *State v. Woodland,* 768 S.W.2d 617, 618 (Mo.App.1989).

Similarly, defendant has failed to preserve the error complained of in point IV relating to the admission of tapes of government wiretaps. Defendant's counsel stated that he had "no objections" to the admission of those tapes. Since counsel for the defendant did not object to the admission of the tapes, the issue is not preserved for appellate review. *Tarkington,* 794 S.W.2d at 299. Nonetheless, we review this point for plain error. *Id.*

■ Defendant complains that the trial court improperly admitted evidence of other crimes. The general rule is that evidence of other crimes is inadmissible. *State v. Hudgins,* 810 S.W.2d 664, 666 (Mo. App.1991). However, there are exceptions to this rule when the evidence tends to establish motive, intent, absence of mistake, identity of the accused, or a common scheme or plan embracing the commission of more than one offense. *Id.* Evidence of an uncharged crime is admissible if its logical relevancy to a particular exception tends to prove a material fact in issue. *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (1954). First, this evidence was logically relevant to show defendant's identity as a party who placed the bomb on Faheen's car. Second, the evidence was relevant to show defendant's deliberation through his plan of retaliation embracing the commission of more than one offense.

It would be hard to find a more classic example of the common scheme or plan exception to the general rule against the admission of evidence of other crimes. The common purpose of each of the crimes disclosed in evidence was retaliation for the bombing of Paul Leisure and, ultimately, to serve as a demonstration of the dominance

of the Leisure family over the Michaels family. Michael Kornhardt was killed for the purpose of concealing defendant's complicity in the other crimes. The crimes are so interlinked and interwoven that the proof of one tends to establish proof of the other. Thus, the evidence was not mere disparagement of defendant's character, but rather contained substantial probative value toward proving defendant's guilt of the crime on trial. "Where there is a conspiracy of two or more parties, formed for the purpose of committing crime, and several crimes are committed in pursuance of the general plan, such crimes are so related to each other that the proof of one tends to prove the other, and on the trial of the defendant for the commission of one, the other may be shown." *State v. Kolafa,* 291 Mo. 340, 236 S.W. 302, 304 (1922); *State v. Martin,* 651 S.W.2d 645, 649 (Mo. App.1983). We find no error in the admission of the evidence of other crimes.

■ Defendant also claims the admission of certain testimony was erroneous because the statements were hearsay. Specifically, defendant points to the statements of others in the Leisure organization who were part of the plan to exact revenge on the Michaels. Members of the Leisure organization who testified on behalf of the State provided the most damaging testimony in this case.

■ Statements of one conspirator are admissible against another under the co-conspirator exception to the hearsay rule even when they are not charged with conspiracy. *State v. Pizzella,* 723 S.W.2d 384, 388 (Mo. banc 1987). Statements of co-conspirators made after the perpetration of a crime for the purpose of concealing the crime are also admissible. *Id.* Furthermore, statements of a conspirator made in furtherance of the conspiracy are admissible against co-conspirators who were not present when the statements were made. *State v. Cornman,* 695 S.W.2d 443, 446 (Mo. banc 1985).

■ Before the hearsay statement of a co-conspirator can be introduced, the existence of a conspiracy must be shown by evidence independent of the statement.

*Cornman,* 695 S.W.2d at 446. It is not necessary to show evidence of an overt act in furtherance of the conspiracy to admit the statement of a co-conspirator. *Id.* Rather it is sufficient to show an agreement between defendant and declarant and a statement in furtherance of their scheme. *Id.* Here, Fred Prater testified that he, Joe Broderick, David and Anthony Leisure, Charles Loewe, and John Ramo agreed to kill somebody in retaliation for the bombing of Paul Leisure. The record provides sufficient evidence of the conspiracy, thus the hearsay statements of the co-conspirators were properly admitted.

■ Finally, defendant argues that trial counsel was ineffective for failing to object to this evidence or preserve it in a motion for new trial. While we have reviewed the admission of this evidence on a plain error standard, we would have affirmed its admission even if the issues had been properly preserved for review. Counsel can not be ineffective for failing to make objections or motions which would be rejected. *Brownlow,* 818 S.W.2d at 304. Point denied.

### Point III

■ For his third point, defendant argues that the trial court erred in refusing to strike venireperson Mullen for cause. Mr. Mullen stated that sequestration would cause him, a self-employed realtor, to lose perhaps as much as $3,000 in sales commission. Defendant argues that this imposed an undue economic hardship on Mr. Mullen.

■ Since claims of undue hardship must be addressed on a case-by-case basis, the trial court has broad discretion in deciding whether to excuse a venireperson on grounds of undue hardship. *State v. Upshaw,* 619 S.W.2d 925, 927–28 (Mo.App. 1981). The interruptions to family, business, and personal lives that come with jury service necessarily impose some degree of hardship on jurors. Nevertheless, the degree of the hardship varies with each case, so we defer to the trial judge's determination that Mr. Mullen's possible losses

did not present a case of undue hardship. Point denied.

## Point V

■ Defendant's fifth point is that the trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence on which to convict defendant. In determining the sufficiency of the evidence to support a conviction, all evidence tending to support the verdict is considered as true, all contrary evidence disregarded, and every reasonable inference supporting the verdict indulged. *State v. Wahby,* 775 S.W.2d 147, 154 (Mo. banc 1989). Our job is to see whether there was sufficient evidence from which a reasonable person could have found defendant guilty as charged. *Nelson,* 818 S.W.2d at 288. Questions of credibility of witnesses and the effects of conflicts or inconsistencies in the testimony of any witness are questions for the jury. *Id.*

The State's evidence showed that defendant agreed with others to avenge the bombing of Paul Leisure with violent acts against members of the Michaels' organization. As part of this plan, defendant followed George Faheen, learned his daily habits, and found his automobile. Defendant then practiced placing explosives on a Volkswagen similar to Faheen's. He received dynamite, had a bomb made, and placed it on Faheen's car. The resulting explosion killed Faheen. Defendant then took steps to cover up the crime. This evidence was sufficient to convict defendant. Point denied.

## Point VI

■ In point six, defendant complains that the trial court improperly excluded the testimony of Thomas Fuller. Fuller was a police officer in the prisoner processing department when Michael Kornhardt was processed. Fuller would have testified that Kornhardt told him that he always gets caught and that he and "Carl" were seen under the hood of a car. Defendant argues that this evidence was relevant to impeach the testimony of Prater by showing his bias and by implicating him in the bombing of Faheen. On the other hand, the State argued that the evidence was hearsay and did not fit within an exception. The trial court excluded the testimony.

■ The testimony was inadmissible as hearsay. The testimony does not fall under the co-conspirator exception because the statements were not made in furtherance of the conspiracy. *State v. Johnson,* 714 S.W.2d 886, 890 (Mo.App.1986). Nor are the statements admissible as a declaration against Kornhardt's penal interest. As a general rule, declarations against penal interest by third parties are not admissible as an exception to the hearsay rule. *State v. Turner,* 623 S.W.2d 4, 8 (Mo. banc 1981) *cert. denied,* 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982). An exception is made if, among other things, there is substantial indicia of reliability and declarant's complicity, if true, would exonerate the accused. *State v. Fitzgerald,* 781 S.W.2d 174, 185 (Mo.App.1989). Neither of these elements are present here. Fuller's testimony was properly excluded. Point denied.

## Point VII

■ In Point VII defendant argues that the trial court erred by refusing to submit an instruction for second degree murder. Defendant argues that the evidence supported an instruction for a lesser included offense to capital murder. In the alternative, defendant argues that the court was required to give the second degree murder instruction under the automatic submission rule. Finally, defendant argues that counsel was ineffective for failing to seek an instruction on manslaughter.

We first address defendant's claim that the court was required to instruct down under the automatic submission rule. That rule, which required courts to give instructions for lesser included offenses in all homicide cases, was abolished by statute. § 556.046.2 RSMo. 1986; *State v. Anding,* 752 S.W.2d 59, 61–62 (Mo. banc 1988). Under § 556.046.2, courts may instruct down only where there is evidence to support a conviction for the lesser offense. Since the former rule was procedural, and not sub-

stantive law, it does not apply to defendant's 1989 trial even though he committed the offense in 1981. *See, Anding,* 752 S.W.2d at 61–62. Defendant's claim that the evidence supported an instruction on second degree murder is equally without merit. A court is not required to give an instruction on a lesser included offense unless there is evidence to acquit the defendant of the charge and convict him on the lesser offense. § 556.046.2; *State v. Stepter,* 794 S.W.2d 649, 652 (Mo. banc 1990). The test is whether the evidence provides a basis to acquit defendant of capital murder and convict him of second degree murder. *Stepter,* 794 S.W.2d at 652. Deliberation is the element which distinguishes capital murder from second degree murder. The use of a bomb on an automobile involves planning and preparation which necessarily requires deliberation. Defendant denied any involvement in the Faheen killing. The record in this case indicates that defendant is either guilty of deliberate, premeditated murder or nothing at all. There is no basis for instructing down from capital murder.

Finally, defendant claims that counsel was ineffective for failing to seek an instruction on manslaughter. Defendant was not entitled to any instructions for lesser included offenses to capital murder. Counsel cannot be ineffective for failing to tender an instruction which would have been rejected. *Brownlow,* 818 S.W.2d at 304. Point denied.

### Point VIII

Defendant's eighth point argues that counsel was ineffective for failing to adequately interview and present at trial certain witnesses for the defense. Specifically, defendant claimed these witnesses would have supported his alibi defense or contradicted and impeached the testimony of the State's witnesses. Allegations in a motion for post-conviction relief are not self-proving, and defendant must prove his grounds for relief by a preponderance of the evidence. *Clemmons v. State,* 795 S.W.2d 414, 416 (Mo.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1689, 114 L.Ed.2d 83 (1991). Defendant has the burden to show that the witnesses could

have been located, would have testified if called, and that their testimony would have provided a viable defense. *State v. Meadows,* 785 S.W.2d 635, 643 (Mo.App.1990). Nevertheless, the choice of witnesses and defense tactics are matters of trial strategy and, in the ordinary case, will not support a claim of ineffective assistance of counsel. *Young v. State,* 761 S.W.2d 725, 728 (Mo. App.1988).

The motion court made long and detailed findings on these claims. We need not review the testimony, or lack thereof, regarding each witness defendant claims should have been called. The court accepted trial counsel's explanations for declining to call the witnesses. The court found that at least one witness would not have testified and that the others would not have provided a viable defense for defendant. We find no clear error in these findings and conclusions which are amply supported by the record. Point denied.

### Point IX

In defendant's ninth point, he claims that he was denied effective assistance of counsel because counsel failed to present two tape recordings. The first recording was of a telephone call between defendant and Prater in which Prater stated that he did not believe defendant was responsible for the Faheen bombing. The second recording would have been used to impeach Frank Termine, a witness for the State.

The motion court denied defendant's claim on the Prater tape because counsel fully cross-examined Prater, counsel felt the tape lacked credibility, and because impeachment is a matter of trial strategy. Similarly, the court denied defendant's claim on counsel's failure to use the Termine tape because counsel fully impeached Termine on cross-examination and because this covered a matter of trial strategy. We find no clear error in the motion court's decision. Point denied.

### Point X

In point ten, defendant claims that counsel was ineffective for withdrawing an ob-

jection made during the cross-examination of defendant. On cross, the State questioned defendant about his conviction in federal court for obstruction of justice. Counsel objected but withdrew his objection when he was shown a record of the conviction.

Proof of prior convictions is relevant to impeach the credibility of a witness. § 491.050 RSMo.1986; *State v. Jones*, 809 S.W.2d 45, 45–46 (Mo.App.1991). Here, the State asked whether defendant was convicted of obstructing justice and was prepared to back it up with a certified record of the conviction. The State's question was permissible and counsel was not ineffective for withdrawing his objection. Point denied.

### Point XI

Defendant's eleventh point claims that counsel was ineffective for failing to have the prosecutor disqualified. The record shows that defendant made his attorney aware of allegations that the prosecutor was biased and had a personal vendetta against the defendant. Defendant's counsel declined to act on the allegations as a matter of trial strategy, hoping the prosecutor's repeated convictions of the Leisures would win sympathy from the jury. The motion court found that counsel's decision was a reasonable exercise of professional judgment. We can find no clear error. Point denied.

### Point XII

In point twelve, defendant claims counsel was ineffective for failing to request a suppression hearing for government wire taps and surveillance on the ground that they were obtained with a false affidavit. Defendant's counsel declined to seek suppression because the same argument had been denied in prior state and federal cases. Counsel felt that the motion would have been redundant. We agree. Counsel is not ineffective for failing to bring a motion that would have been rejected. *Brownlow*, 818 S.W.2d at 304. The motion court's findings are not erroneous. Point denied.

### Point XIII

In point thirteen, defendant claims the motion court failed to make findings of fact and conclusions of law on points contained in his second amended motion to vacate sentence. Defendant filed his second amended motion more than sixty days after the court appointed counsel. Rule 29.15(f). Therefore, defendant's motion was time-barred and he waived his rights to proceed on the points contained in the motion. Rule 29.15(b). Point denied.

### Point XIV

Finally, defendant's fourteenth point claims that the motion court erred in denying him the right to be present at his hearing for post-conviction relief. Rule 29.15(h) provides that a defendant need not be present at any hearing on a motion under Rule 29.15. Furthermore, proceedings under Rule 29.15 are civil proceedings which do not invoke defendant's right of confrontation under the Sixth Amendment. *State v. Finerson*, 826 S.W.2d 367, 371 (Mo.App.1992). Point denied.

Affirmed.

GRIMM, P.J., and CRANDALL, J., concur.